NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1697-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TYREE I. DWYER,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

July 10, 2026

APPELLATE DIVISION

Argued March 10, 2026 – Decided July 10, 2026

Before Judges Sumners, Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 23-09-1913, 24-04-0725 and 24-06-1245.

Alexander G. Leone (Leone Law LLC) argued the cause for appellant.

Hannah Faye Kurt, Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Essex County Prosecutor, attorney; Hannah Faye Kurt, of counsel and on the brief).

The opinion of the court was delivered by

SUSSWEIN, J.A.D.

This appeal requires us to examine the tension between the criminal justice goals of (1) breaking the vicious cycle of addiction and crime by means of court-ordered substance abuse treatment provided by the Recovery Court program[1] and (2) promoting public safety by assuring stern punishment of gun offenders through strict enforcement of the Graves Act.[2] The tension between these two important policy goals is reflected in a series of amendments to the New Jersey Code of Criminal Justice (penal code), N.J.S.A. 2C:1-1 to 104-9. Some revisions to the penal code were adopted to facilitate the expansion of New Jersey's nationally acclaimed Recovery Court program by eliminating some—but not all—categorical bars to admission. But the penal code has also been amended to toughen New Jersey's criminal gun laws, significantly expanding the scope of the Graves Act to include simple unlawful possession of

---

[1] The program was formerly called the Drug Court program.

[2] The "Graves Act" is named for Senator Francis X. Graves, Jr., who sponsored legislation in the early 1980s that imposed a mandatory minimum term of imprisonment and parole ineligibility on defendants convicted of certain predicate crimes committed while in possession of a firearm. L. 1981, c. 31; N.J.S.A. 2C:43-6(c). The term "Graves Act" now broadly refers to all firearms offenses that carry a mandatory term of imprisonment and minimum period of parole ineligibility, including unlawful possession of a handgun—the crime defendant pled guilty to in this case. The Graves Act currently mandates a term of imprisonment and period of at least forty-two months of parole ineligibility. N.J.S.A. 2C:43-6(c).

a handgun, upgrading that offense from a third- to a second-degree crime, and lengthening the minimum period of parole ineligibility from thirty-six to forty-two months.

These two criminal justice policies intersect in N.J.S.A. 2C:35-14, the penal code provision that authorizes sentencing courts to order substance abuse treatment in lieu of imprisonment. That provision supports the Recovery Court program by providing a means by which qualified defendants may be sentenced to "special probation," thereby allowing them to avoid an otherwise mandatory prison term or the strict presumption of imprisonment codified in N.J.S.A. 2C:44-1(d). N.J.S.A. 2C:35-14(a)(5) expressly provides that in order for a defendant to be eligible for special probation, the sentencing court must find that they "did not possess a firearm at the time of the present offense" or "at the time of any pending criminal charge." Since its enactment, this provision has been interpreted to categorically bar all Graves Act offenders from special probation.

In the present matter, defendant Tyree I. Dwyer proposes a novel construction of the special probation statute, arguing that in light of the general legislative policy to promote and expand access to Recovery Court, the firearms possession disqualification feature in N.J.S.A. 2C:35-14(a)(5) should be narrowly construed to apply only to the actual possession of a firearm and not

3

to constructive possession, as was proved in this case. But nothing in the plain language, legislative history, or historical application of the penal code's firearms provisions supports the distinction defendant asks us to draw. We conclude that with respect to the boundaries of special probation, the Legislature has made clear that convicted gun offenders are not suitable candidates for that sentencing alternative.

Defendant appeals the June 5, 2024 Law Division order finding him to be ineligible for admission to Recovery Court based on pending firearms charges, one of which he eventually pled guilty to. He also appeals the January 7, 2025 aggregate state prison sentence imposed following his guilty plea convictions for unlawful possession of a firearm and simple possession of controlled dangerous substances (CDS).

After reviewing the record in light of the governing legal principles, we affirm the denial of defendant's admission to Recovery Court. Defendant's firearm conviction renders him categorically ineligible for special probation.

With respect to defendant's sentencing argument, the trial court made various comments that defendant was "engaged in the drug trade" notwithstanding that all CDS possession-with-intent-to-distribute charges were dismissed pursuant to the plea agreement. Those comments may have

influenced the court's decision to find certain aggravating factors, which in turn influenced its decision to reject defendant's request to be sentenced to a state prison term one year shorter than the maximum term authorized by the plea agreement. Because it is unclear on the present record whether and to what extent the trial court relied on the dismissed charges to find aggravating factors, including factors the State had not proposed, we deem it appropriate to remand for the court to make new findings with respect to the relevant aggravating and mitigating factors and to determine, in its discretion, whether to impose a shorter state prison sentence than the maximum term authorized by the plea agreement.

I.

We discern the following pertinent facts and procedural history from the record. On March 21, 2023, police executed a search warrant at a Newark residence and found three handguns. Defendant, along with several other individuals, was present in the house at the time of the search.

On September 29, 2023, defendant was charged by indictment with three counts of unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1), one count of possession of a defaced firearm, N.J.S.A. 2C:39-3(d), two counts of possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j), and one count of possession of hollow nose ammunition, N.J.S.A. 2C:39-3(f)(1).

5

In a separate investigation, on November 16, 2023, officers conducted a controlled buy of heroin and crack cocaine from defendant and another person, Leibys Mercedes.[3] Mercedes drove to the prearranged sale; defendant was a passenger in the car. The officers arrested defendant and Mercedes, observed bags of heroin and cocaine on defendant's lap, and found a handgun in the car's center storage compartment.

On November 16, 2023, defendant was charged by complaint-warrant with possession of a CDS, N.J.S.A. 2C:35-10(a)(1); possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(b)(3); possession of heroin and a CDS with intent to distribute within five hundred feet of a school, N.J.S.A. 2C:35-7(a); possession of heroin and a CDS with intent to distribute within five hundred feet of a public park, N.J.S.A. 2C:35-7.1(a); possession of a firearm during the commission of certain CDS distribution/possession-with-intent-to-distribute crimes, N.J.S.A. 2C:39-4.1(a); and possession of a firearm by a previously convicted person, N.J.S.A. 2C:39-7(b)(1). Defendant was charged by indictment with these offenses on June 27, 2024.

Defendant applied for admission to Recovery Court prior to the June 27 indictment but while all offenses charged by complaint-warrant were pending.

---

[3] Mercedes is not a party to this appeal.

A-1697-24

The trial court convened a hearing on June 5, 2024 to determine defendant's legal eligibility for special probation under N.J.S.A. 2C:35-14. The court ruled that pursuant to N.J.S.A. 2C:35-14(a)(5), defendant was barred from special probation—and thus precluded from entry into Recovery Court—because the pending charges included unlawful possession of a firearm.

Defendant filed a motion for reconsideration, which was denied on July 25, 2024. In August 2024, defendant moved for leave to appeal the trial court's interlocutory ruling. We denied defendant's motion on September 5, 2024, and the Supreme Court denied his ensuing motion for leave to appeal on November 12, 2024.

On November 18, 2024, defendant pled guilty to one count of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), stemming from the March 21, 2023 incident. He also pled guilty to two counts of third-degree simple possession of a CDS, N.J.S.A. 2C:35-10(a)(1)—one stemming from the November 21, 2023 arrest, and another arising from a separate incident on February 4, 2024. As part of the negotiated plea agreement, the State agreed to dismiss all remaining charges. The plea agreement provided for an aggregate

A-1697-24

state prison sentence of six years with forty-two months of parole ineligibility.[4]
The agreement did not preclude defendant from arguing for a shorter prison term within the second-degree range. On January 7, 2025, defendant was sentenced in accordance with the plea agreement to an aggregate six-year prison term with a forty-two-month period of parole ineligibility.

This appeal followed. Defendant raises the following contentions for our consideration:

> POINT I
>
> N.J.S.A. 2C:35-14'S TEXT AND LEGISLATIVE HISTORY PROVE THAT ALLEGATIONS OF NON-VIOLENT CONSTRUCTIVE POSSESSION CANNOT BAR TRACK ONE CANDIDATES FROM RECOVERY COURT, AND THE RULE OF LENITY LEADS TO THE SAME CONCLUSION.
>
> POINT II
>
> THE SENTENCING COURT ABUSED ITS DISCRETION BY, INTER ALIA, FAILING TO EXPLAIN CLEARLY WHY AN AGGRAVATING OR MITIGATING FACTOR PRESENTED BY THE PARTIES WAS FOUND OR REJECTED AND HOW THE FACTORS WERE BALANCED TO ARRIVE AT THE SENTENCE.
>
> POINT III

---

[4] Specifically, the plea agreement authorized a six-year prison term with forty-two months of parole ineligibility on the gun possession charge, to run concurrent to a five-year prison term for each of the CDS charges.

THE COURT ABUSED ITS DISCRETION BY REPEATEDLY RELYING ON AN IMPERISSIBLE BASIS AND CONSIDERING IRRELEVANT AND INAPPROPRIATE FACTORS.

Defendant further argues in his reply brief that:

POINT I

THE STATE'S LEADING POINT[5] IS FALLACIOUS AND INCONSISTENT WITH CASELAW.

POINT II

THE STATE ASSERTS THAT THE SENTENCING COURT "PROPERLY EXPLAINED ITS REASONS" BUT DOES NOT IDENTIFY ANY EXPLANATION.

POINT III

THE STATE DOES NOT EXPLAIN HOW IT COULD HAVE BEEN PERMISSIBLE FOR THE COURT TO USE DISMISSED INDICTMENTS AGAINST [DEFENDANT] AT SENTENCING.

## II.

We first address defendant's novel argument concerning his eligibility for special probation under N.J.S.A. 2C:35-14. The motion court, relying on N.J.S.A. 2C:35-14(a)(5), denied defendant's pretrial application to Recovery

---

[5] The State argued in the first point of its appeal brief that "in the context of the [penal] code, and thus N.J.S.A. 2C:35-14, 'possession' includes both actual and constructive possession."

A-1697-24

Court because several of the then-pending charges involved possession of a firearm. As noted, defendant has since pled guilty to a single firearms possession offense arising from the execution of the search warrant of the Newark premises.

N.J.S.A. 2C:35-14(a) provides in pertinent part that a person may be placed on special probation "provided that the court finds on the record that . . . (5) the person did not possess a firearm at the time of the present offense and did not possess a firearm at the time of any pending criminal charge." Defendant argues that this provision should be construed to apply only to actual possession of a firearm, not to constructive or joint possession. Because the charges were based on constructive possession—none of the seized firearms were found on defendant's person—defendant contends he is not statutorily ineligible for special probation and thus not categorically barred from participating in Recovery Court.

The gravamen of defendant's novel argument is that the word "possess" as used in N.J.S.A. 2C:35-14(a)(5) is "at best, ambiguous" as to whether it means actual possession only, or both actual and constructive possession. Defendant further argues that because the Legislature has "moved inexorably toward expanding [N.J.S.A. 2C:35-14] as a sentencing alternative," State v. Harris, 466

N.J. Super. 502, 531 (App. Div. 2021) (alteration in original) (quoting State v. Figaro, 462 N.J. Super. 564, 571 (App. Div. 2020))—a proposition that we do not disagree with—we should resolve this purported ambiguity to allow greater access to Recovery Court. Defendant also contends that the "rule of lenity" supports his narrowing interpretation of N.J.S.A. 2C:35-14(a)(5).

A.

We begin our analysis by acknowledging the governing legal principles. Because "appeals construing N.J.S.A. 2C:35-14 . . . present solely questions of law," we review the motion court's decision de novo. Harris, 466 N.J. Super. at 521 (quoting Figaro, 462 N.J. Super. at 571).

It is well settled that "[t]he overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" State v. S.B., 230 N.J. 62, 67 (2017) (quoting State v. Robinson, 217 N.J. 594, 604 (2014)). As a result, "[t]o determine the Legislature's intent, we look to the statute's language and give those terms their plain and ordinary meaning because 'the best indicator of that intent is the plain language chosen by the Legislature.'" State v. J.V., 242 N.J. 432, 442-43 (2020) (first citing DiProspero v. Penn, 183 N.J. 477, 492 (2005); and then quoting Johnson v. Roselle EZ Quick, LLC, 226 N.J. 370, 386 (2016)). In DiProspero, our Supreme

11

Court emphasized that "the Legislature is presumed to be aware of judicial construction of its enactments." 183 N.J. at 494 (quoting N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 195 n.6 (2002)).

Turning to substantive legal principles, "[t]he law recognizes three distinct forms of possession, actual, constructive, and joint." State v. Morrison, 188 N.J. 2, 14 (2006) (citing State v. Spivey, 179 N.J. 229, 236 (2004)). A person has actual possession of an object if "he has physical or manual control over it." Ibid. (quoting Spivey, 179 N.J. at 236). A person has constructive possession when, "although he lacks 'physical or manual control,' the circumstances permit a reasonable inference that he has knowledge of [the object's] presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time." Ibid. (quoting Spivey, 179 N.J. at 237). In Spivey, our Supreme Court determined that "possession" as used in N.J.S.A. 2C:39-4.1(a)—one of defendant's pending charges when he applied to Recovery Court—includes both actual and constructive possession. 179 N.J. at 236-37.

B.

Applying these principles to the specific provision at issue, we conclude that the term "possess" as used in N.J.S.A. 2C:35-14(a)(5) is not limited to actual

possession but also includes constructive possession. At the time the statute was enacted, our courts had long interpreted "possession" in the penal code—including in the definitions of firearm possession offenses—to include constructive possession. See Spivey, 179 N.J. at 236 ("We begin our analysis by noting that an object may be actually or constructively possessed."); Morrison, 188 N.J. at 14 ("The law recognizes three distinct forms of possession, actual, constructive, and joint."); State v. Schmidt, 110 N.J. 258, 270 (1988) (noting that "[i]n the absence of a statutory definition of the act of possession, our Code assumes that pre-Code concepts of possession would survive," including the principle that "possession can be either actual or constructive" (internal quotation marks and citations omitted)); State v. Stewart, 96 N.J. 596, 604 (1984) ("[P]ossession of a firearm for purposes of the Graves Act includes not only actual possession but constructive possession that the defendant is able to convert practically immediately to actual possession."). We reiterate that we must presume that when the Legislature enacted N.J.S.A. 2C:35-14(a)(5) and used the term "possession," it was familiar with the case law construing that term with respect to substantive firearms crimes. See DiProspero, 183 N.J. at 494.

A-1697-24

While N.J.S.A. 2C:35-14 is codified in chapter 35 of the penal code (Controlled Dangerous Substances), rather than the chapters devoted to sentencing—chapter 43 (Authorized Disposition of Offenders) and chapter 44 (Authority of Court in Sentencing)—special probation is a sentencing feature, and thus should be construed in context with other sentencing provisions of the penal code. It bears repeating that other penal code sentencing provisions pertaining to firearms do not distinguish between actual and constructive possession. See Stewart, 96 N.J. at 604. Unlawful conduct constituting constructive possession of a handgun is graded as a second-degree crime, no different from actual possession of a handgun. Convictions based on both theories, moreover, are subject to the same presumption of imprisonment, N.J.S.A. 2C:44-1(d); range of authorized sentences, N.J.S.A. 2C:43-6(a)(2); and mandatory minimum period of parole ineligibility, N.J.S.A. 2C:43-6(c).

Defendant expressly acknowledges, as he must, that "in the Graves Act statutory framework actual and constructive possession are generally treated similarly." However, he argues that because the purpose of the Graves Act (deterring the use and possession of firearms) is "fundamentally different" from that of N.J.S.A. 2C:35-14 (rehabilitation for those with a substance use

disorder), we should not reflexively import the meaning of "possession" from the Graves Act into the special probation statute.

We are unpersuaded. Without exception, the term "possession" as used in the penal code with respect to firearms includes both actual and constructive possession. Stated another way, when using the term "possession," the penal code does not differentiate between actual possession, joint possession, and constructive possession of a firearm.

While the underlying purpose of N.J.S.A. 2C:35-14 is unquestionably different from the purpose that undergirds the Graves Act, the Legislature has resolved the conflict between the objectives of these two sentencing provisions by making clear that the immediate public safety goal advanced by the Graves Act takes precedence over the long-term rehabilitative goal advanced by permitting sentencing courts to order substance abuse treatment in lieu of imprisonment. In this instance, the Legislature by the plain language of N.J.S.A. 2C:35-14(a)(5) has stated unequivocally that gun offenders are not eligible for special probation and thus may not participate in the Recovery Court program.

C.

We likewise are unpersuaded by defendant's reliance on amendments to other subsections of N.J.S.A. 2C:35-14 to support his novel construction of

15

subsection (a)(5). We do not dispute that the amendments to the special probation statute over time have expanded its reach to allow more defendants to participate in Recovery Court.[6] But none of those revisions impacts N.J.S.A. 2C:35-14(a)(5), the provision that expressly makes gun offenders ineligible. That feature was added as part of the 1999 amendments to the statute, L. 1999, c. 376, § 2, and has not been modified since. For that reason, defendant's reliance on several passages in State v. Hyland, 238 N.J. 135 (2019), is misplaced, as those passages refer to the 2012 amendments to N.J.S.A. 2C:35-14, which, notably, left N.J.S.A. 2C:35-14(a)(5) unchanged. The 2012 amendments show conclusively that the Legislature knows how to amend N.J.S.A. 2C:35-14 to eliminate or relax eligibility prerequisites but did not amend the categorical disqualification feature in N.J.S.A. 2C:35-14(a)(5). We presume the legislative decision to repeal some disqualifying circumstances but

---

[6] See, e.g., Harris, 466 N.J. Super. at 531 ("The proven success of the [Recovery] Court program . . . has given the Legislature incentive and confidence to amend N.J.S.A. 2C:35-14 to expand the circumstances when sentencing courts may eschew imprisonment in favor of rehabilitative treatment."); State v. Hyland, 238 N.J. 135, 145 (2019) (recognizing that the 2012 amendments to the statute sought "to permit additional offenders who may benefit from the [Recovery Court] program to be diverted into the program instead of being sentenced to a term of incarceration" (quoting S. Budget & Appropriations Comm. Statement to S. 881 1 (L. 2012, c. 23))).

not others was intentional.  Cf. DiProspero, 183 N.J. at 495 ("The canon of statutory construction, expressio unius est exclusio alterius—expression of one thing suggests the exclusion of another left unmentioned—sheds some light on the interpretative analysis." (quoting Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 112 (2004))).

Relatedly, it bears emphasis that each time the Legislature expanded eligibility for special probation, it did so expressly and explicitly.  Defendant cites nothing in the text or legislative history of N.J.S.A. 2C:35-14 to suggest the Legislature ever meant to allow any convicted gun offenders to be admitted to the Recovery Court program.

In sum, while various statutory amendments have indeed expanded the Recovery Court program's reach, those changes have all been codified in explicit statutory text.[7]  This shows conclusively that when the Legislature wants to enlarge the pool of potential Recovery Court candidates by altering the

---

[7] For example, the 1999 amendments expanded eligibility for special probation to defendants convicted of certain non-violent crimes other than drug-related offenses, Harris, 466 N.J. Super. at 531-32 (citing L. 1999, c. 376, § 2), and the 2012 amendments expanded special probation to no longer exclude defendants convicted of second-degree robbery and second-degree burglary, id. at 532 (citing L. 2012, c. 23, § 5).  We note the Legislature did not include defendants convicted of armed robbery.

eligibility/ineligibility provisions of N.J.S.A. 2C:35-14, it does so with precise statutory language. See also note 8.

For all the foregoing reasons, defendant's contention that the amendments to subsections of N.J.S.A. 2C:35-14 that do not involve gun offenses impliedly altered the meaning of N.J.S.A. 2C:35-14(a)(5) is unavailing. In reaching that conclusion, we acknowledge that under the rule of lenity, ambiguities that "cannot be resolved by analysis of the relevant text and the use of extrinsic aids . . . [must] be resolved in favor of the defendant." State v. O'Donnell, 255 N.J. 60, 81 (2023) (alteration in original) (quoting State v. Regis, 208 N.J. 439, 451 (2011)). However, the rule of lenity only applies "if the statute still remains ambiguous" "after reviewing all sources of legislative intent." Ibid. (quoting State v. D.A., 191 N.J. 158, 165 (2007)). Here, there is no ambiguity in N.J.S.A. 2C:35-14(a)(5) with respect to the categorical exclusion of persons presently charged with or eventually convicted of any gun offense. Accordingly, defendant's guilty plea conviction for unlawful possession of a weapon renders him ineligible for special probation and Recovery Court.

D.

Finally, we note that in the absence of explicit legislative instruction, the policy shift defendant urges should not be made by a court based solely on the

18

Legislature's general support for Recovery Court. That is especially true given that the Legislature has just as clearly shown its support for stern punishment for handgun possession crimes without distinguishing between actual, joint, or constructive possession. It bears noting with respect to the role of courts in implementing the Graves Act that we have been instructed by our Supreme Court to strictly adhere to it and not allow, for example, plea negotiations to evade its stern penal consequences except as may be authorized pursuant to N.J.S.A. 2C:43-6.2.[8] See Admin Off. of the Cts., Admin. Directive #09-18, Guidelines for Downgrades/Dismissals Under the Graves Act: Strict Enforcement of Mandatory Minimum Custodial Terms for Offenses Involving Firearms (July 2, 2018).

The point simply is that the policy decision at the heart of this case must be made by the Legislature. We add on that score that the Legislature has recognized that addiction and handgun possession is a dangerous combination. See, e.g., N.J.S.A. 2C:58-3(c)(3) (barring a person with a substance use disorder

---

[8] That section of the penal code authorizes a motion by the prosecutor to the assignment judge to reduce or even eliminate the period of parole ineligibility. See also N.J.S.A. 2C:43-6.3 (authorizing the resentencing of persons serving a Graves Act sentence to reduce or eliminate the period of parole ineligibility). These two provisions confirm that the Legislature knows how to create exceptions to the Graves Act and that when it chooses to do so, those exceptions are codified in explicit statutory text.

A-1697-24

from receiving a handgun purchase permit or firearms purchaser identification card).  The Recovery Court process is prepared to deal with a defendant who relapses and possesses CDS in violation of special probation.  See N.J.S.A. 2C:35-14(f)-(g) (outlining comprehensive procedures and standards governing the revocation of special probation upon a violation of a term or condition of the program); see also State v. Clarke, 203 N.J. 166, 181 (2010) (recognizing that "the disease of drug or alcohol dependence is a chronic, relapsing disorder" (quoting S. L. & Pub. Safety Comm. Statement to S. 1253 (Jan. 25, 1999))).  But if a Recovery Court participant gained access to a handgun, it could expose a host of new dangers that the program is not designed to handle.

Only the Legislature can gauge public sentiment regarding the sentencing of drug-dependent gun offenders and whether public support for Recovery Court might be impacted if handgun offenders were offered treatment in lieu of mandatory imprisonment, especially if a gun-related tragedy were to occur during the treatment process.  As noted, in Harris, we commented on "[t]he proven success of the [Recovery] Court program" and the "broad recognition by all three branches that it promotes public safety," which has "given the Legislature incentive and confidence to amend N.J.S.A. 2C:35-14 to expand the circumstances when sentencing courts may eschew imprisonment in favor of

rehabilitative treatment."  466 N.J. Super. at 531.  We have no way of knowing, however, whether the program would be as successful with respect to drug-dependent <u>gun</u> offenders, or whether making such offenders eligible for special probation would promote or denigrate public safety.   That is a policy determination for the Legislature to make, and as we have explained, it is clear to us that the Legislature has, for now, made its decision.

### III.

We next address defendant's sentencing contentions.  Defendant argues the trial court (1) failed to satisfactorily explain how it found and weighed the aggravating and mitigating factors, (2) impermissibly relied on defendant's dismissed indictments, and (3) erroneously found aggravating factors one and five and rejected mitigating factors one and two without credible evidence in the record.  Additionally, he argues that various comments by the court at sentencing "arguably evidenced hostility to [defendant's] right to be heard in accordance with due process."

### A.

As we have noted, the negotiated plea agreement contemplated a maximum six-year prison term with forty-two months of parole ineligibility on the gun possession charge, to run concurrent to five-year sentences for each of

the CDS possession convictions. At the sentencing hearing, defendant asked the court to reduce the six-year sentence to five years but otherwise urged the court to effectuate the plea agreement. In support of that proposed deviation from the maximum negotiated prison term, defendant argued that no aggravating factors applied and that numerous mitigating factors applied. Specifically, defendant argued that the charges to which he pled guilty had no victim or injury. With respect to the handgun possession charge, defendant stressed there was no allegation that he used the gun to harm or threaten anyone, and, defendant emphasized, the two CDS convictions were for simple possession, not distribution or possession with intent to distribute. Defendant thus argued that aggravating factors one ("The nature and circumstances of the offense, and the role of the actor in committing the offense, including whether or not it was committed in an especially heinous, cruel, or depraved manner") and two ("The gravity and seriousness of harm inflicted") should not apply, and that mitigating factors one ("The defendant's conduct neither caused nor threatened serious harm") and two ("The defendant did not contemplate that the defendant's conduct would cause or threaten serious harm") should apply. N.J.S.A. 2C:44-1(a)(1)-(2), (b)(1)-(2).

A-1697-24

In response to defense counsel's allocution, the trial court asked, "Is it your position that being engaged in the drug trade does not cause or threaten serious harm to the community?" When defense counsel pointed out that defendant had only pled guilty to simple possession of CDS, not distribution or possession with intent to distribute, the court stated, "Well that's what he pled to, that's not what he did." The court further explained:

> [Y]ou are asking me to make a finding that there's mitigation here when we know that this is a negotiated plea, which is constructed as a way of effectively ending six indictments that your client has collected over basically a two-year period.
>
> And so the fact that he . . . has not been tried and will not be convicted of [the dismissed charges] is really a matter of happenstance isn't it?

Defendant also argued that mitigating factors four ("There were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense") and ten ("The defendant is particularly likely to respond affirmatively to probationary treatment") should apply, contending that defendant's conduct was caused by his drug addiction. N.J.S.A. 2C:44-1(b)(4), (10). In response, the trial court asked, "What steps did he take to address his addiction [while] incarcerated?" Defense counsel replied that he did not have any information regarding treatment defendant received in jail.

23

Additionally, defendant argued that mitigating factors eight ("The defendant's conduct was the result of circumstances unlikely to recur") and nine ("The character and attitude of the defendant indicate that the defendant is unlikely to commit another offense") should apply. N.J.S.A. 2C:44-1(b)(8), (9). In response, the court noted defendant's history of reoffending:

> [T]o be clear, your client was a convicted felon before the first indictment here was filed . . . .
>
> So even though he had already had a taste of the criminal justice system, he picked up six additional indictments, and while he was out on one case . . . he picked up more indictments . . . .
>
> So for you to tell me that there's no risk he's going to reoffend, that's exactly what he did, he continued a crime spree while he was subject to the jurisdiction of this [c]ourt without regard[] to the conditions of his release, which is why he spent the rest of the remaining time awaiting the resolution of these cases in rather than out, because he was rearrested and reindicted.
>
> So for you to suggest to me that he's unlikely to reoffend, it rings a little [hollow].

The State argued at the sentencing hearing that no mitigating factors applied, and that aggravating factors three, six, and nine applied. During the State's allocution, the court sua sponte suggested that aggravating factors one and five should apply. Specifically, the court referred to and drew inferences from the circumstances of defendant's arrest, noting:

24

With specific regard to aggravating factor number [one], you're saying . . . you're in a stash house, and there's no allegation or suggestion made by the defense that he was living there, it just happened to be activity that was ongoing and he happened to be merely present for that, why wouldn't I consider aggravating factor number [one]?

Additionally, regarding aggravating factor five ("There is a substantial likelihood that the defendant is involved in organized criminal activity," N.J.S.A. 2C:44-1(a)(5)), the court engaged in the following colloquy with the prosecutor:

The Court: I mean the stash house was a target, that's how you got a search warrant, correct?

[Prosecutor]: Yes.

The Court: You made a case to a sitting Superior Court judge who was satisfied that there [were] sufficient proofs based on sworn affidavits that there would be guns and drugs found there.

[Prosecutor]: Correct.

The Court: And when the warrant was executed there were guns and drugs found there, correct?

[Prosecutor]: Correct.

The court ultimately imposed a six-year sentence, in accordance with the plea agreement. The court first noted that

25

defendant's adult record is of serious concern, and I believe intensely relevant not only to the plea that the State negotiated, but also to the aggravating and mitigating factor analysis . . . and it also in my view undermines counsel's application that I deviate from the negotiated plea to the benefit of the defendant.

The court then recounted defendant's criminal history dating back to 2017, which included "[thirteen] known arrests, [three] prior indictable convictions, [two] disorderly persons convictions, [two] prior bench warrants, [and] [two] violations of probation."

Next, the court concluded that no mitigating factors applied, stating:

> The defendant did get the benefit of probation, and if all of this was driven by a drug problem, the time to have addressed it was in 2020 when he was placed on probation, and that apparently never happened.
>
> And then when he was out on the first of these indictments and subject to pretrial detention, that would have been an additional time he could have sought treatment, but he didn't.
>
> I have a copy of a letter from an entity called Catholic Charities Straight and Narrow, Inc., which apparently was a long-term residential program, in which he was subject to—he was apparently scheduled for admission in a Paterson facility in May of 2024. But in that period, beginning approximately February 16, 2024, he had picked up new indictments . . . .
>
> So perhaps I don't know when this application was made to go into inpatient, but while he was waiting to go in inpatient he was involved in additional illegal

activity that resulted in additional indictments now before the Court.

So I reject all of the mitigating factors that the defendant has provided here. I find no mitigation.

The court then found aggravating factors one, three, five, six, and nine. The court noted that "[d]efendant had the benefit of the probation and his response to that was to commit more crimes." With respect to factor nine ("The need for deterring the defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9)), the court observed that "in so many instances it is boilerplate, but not here, absolutely not here." The court further added, "I reject any suggestion that . . . engaging in the sale of narcotics is a victimless crime," again without acknowledging that in this case, defendant had not pled guilty to selling or distributing CDS. Ultimately, the court concluded that "the aggravating factors far preponderate over the mitigating factors" and "weigh in favor of a custodial term towards the higher end of the range." The court therefore sentenced defendant to the maximum state prison sentence permitted under the plea agreement.

## B.

Once again, we preface our analysis by canvassing the governing legal principles, including the limited scope of our review. "Appellate courts review

27

sentencing determinations in accordance with a deferential standard." State v. Fuentes, 217 N.J. 57, 70 (2014). A reviewing court must not substitute its judgment for that of the sentencing court. State v. O'Donnell, 117 N.J. 210, 215 (1989). Accordingly, the sentence must be affirmed unless:

> (1) [T]he sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Fuentes, 217 N.J. at 70 (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Stated another way, we may modify a defendant's sentence only when convinced that the sentencing judge was clearly mistaken. State v. Johnson, 118 N.J. 10, 15 (1990); State v. Jabbour, 118 N.J. 1, 6 (1990). Furthermore, "'[a] sentence imposed pursuant to a plea agreement is presumed to be reasonable' because it is predicated on the defendant's voluntary, knowing waiver of his constitutional rights." State v. Bell, 250 N.J. 519, 542 (2022) (quoting Fuentes, 217 N.J. at 70-71 (2014)).

The aggravating and mitigating factors a trial court may consider in imposing a sentence are set forth in N.J.S.A. 2C:44-1(a) and (b). It is well-established that the consideration of aggravating and mitigating factors must be

part of the deliberative process. State v. Dalziel, 182 N.J. 494, 505 (2005); State v. Cassady, 198 N.J. 165, 180 (2009). Trial courts must "explain and make a thorough record of their findings to ensure fairness and facilitate review." State v. Comer, 249 N.J. 359, 404 (2022). "Proper sentencing thus requires an explicit and full statement of aggravating and mitigating factors and how they are weighed and balanced." State v. McFarlane, 224 N.J. 458, 466 (2016) (quoting State v. Randolph, 210 N.J. 330, 348 (2012)); see also State v. Case, 220 N.J. 49, 66 (2014) ("[C]ritical to the sentencing process and appellate review is the need for the sentencing court to explain clearly why an aggravating or mitigating factor presented by the parties was found or rejected and how the factors were balanced to arrive at the sentence.").

Relatedly, "'[a]lthough our case law does not require that trial courts explicitly reject every mitigating factor argued to the court,' such a practice is encouraged." Fuentes, 217 N.J. at 73 (quoting State v. Bieniek, 200 N.J. 601, 609 (2010)). If the trial court "fails to provide a qualitative analysis of the relevant sentencing factors on the record" or "considers an aggravating factor that is inappropriate to a particular defendant or to the offense at issue," an appellate court "may remand for resentencing." Id. at 70.

Finally, and of special importance for purposes of the present appeal, the law is well settled that a charge that does not result in a conviction may be considered in sentencing, as "[a]dult arrests that do not result in convictions may be relevant to the character of the sentence . . . imposed." State v. Rice, 425 N.J. Super. 375, 382 (App. Div. 2012) (quoting State v. Tanksley, 245 N.J. Super. 390, 397 (App. Div. 1991)). However, and of special relevance in the present matter, "[t]he important limitation of course is that the [court] shall not infer guilt as to any underlying charge with respect to which the defendant does not admit his guilt." State v. Green, 62 N.J. 547, 571 (1973), overruled on other grounds by State v. K.S., 220 N.J. 190 (2015).

## C.

Applying the foregoing principles to the present facts, we conclude that in light of the trial court's articulation of the reasons for its findings and its colloquy with both counsel during their respective allocutions, the court erred in finding aggravating factors one and five—which, we note, the prosecutor did not ask to be considered. In this instance, the fact that defendant was arrested at what police reports described as a "stash house," without more, does not make his proven offense conduct "especially heinous, cruel, or depraved" or demonstrate a substantial likelihood of involvement in organized criminal

30

activity. N.J.S.A. 2C:44-1(a)(1), (5). We reiterate that defendant only pled guilty to simple possession CDS offenses.

While this is a close case and we are generally reticent to second-guess a sentencing court with respect to the factual basis for aggravating and mitigating factors, out of an abundance of caution, we deem it appropriate to remand for the trial court to reconsider its findings with respect to the aggravating and mitigating factors as they relate to defendant's request to deviate from the maximum sentence contemplated in the plea agreement. We offer no opinion on whether a five- or six-year prison sentence should be imposed.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division